The opinion of the court was delivered by
Nicholls, C. J.
On the 27th of February, 1838, Robert McCausland mortgaged certain property in the parish of West Feliciana to secure two hundred shares of the capital stock of the Citizens Bank of Louisiana, to which he had subscribed.
He died in 1851, and his wife in 1853.
McCausland had living in 1879 two children and several grandchildren, minors.
At a probate sale made in the succession of McCausland in_1852, O. B. Chinn purchased the plantation.
*1161 The other property (excepting the Citizens Bank stock) was partitioned in kind.
The defendant, Irvine, bought the plantation at a sale made in the matter of the succession of Chinn, on the 19th September, 1872.
Neither McCausland nor his heirs were called upon to pay contributions upon the stock until 1878, when the bank proceeded, by seizure aod sale, to sell the shares of stock (then reduced to one hundred and eighty-six shares, under the operation of the statute of April, 1853) belonging to McCausland, and the land mortgaged to secure the same. McCausland’s heirs were not cited or notified in said proceedings, which were directed against John F. Irvine, the present defendant, as being at that time the actual possessor of the property. At the sale, Irvine became, on the 15th of November, 1879, the purchaser, for the price of eight hundred and thirty-five dollars.
In the present suit, the bank alleging that Irvine became on the date mentioned the owner by purchase at the sheriff’s sale made in the matter of the Citizens Bank of Louisiana vs. Robert McCausland and John F. Irvine, of one hundred and eighty-six shares of mortgage stock of said bank, the property of Robert McCausland (defendant in said suit), seized and sold therein; that the Citizens Bank had called for the following contributions, to-wit: two dollars per share, payable on the 1st day of December of each of the years 1881 to 1891 inclusive — has sued defendant as the owner of said stock for the sum of four thousand four hundred dollars and interest, as an amount due by Irvine for such contributions. Plaintiff also prays for the recognition of the special mortgage securing the said shares of stock, and for the seizure and sale thereof to pay said contributions, reserving all its rights against defendant for the balance and sums which will hereafter fall due on said shares of stock.
Defendant pleaded the general issue and specially denied that he was a stockholder, or that he ever assumed the liabilities of a stockholder of the Citizens Bank. He averred that the pretended seizure and sale of one hundred and eighty-six shares of mortgage stock of the bank belonging to McCausland, and the adjudication to him of said stock was an absolute nullity, and said pretended sale should be annulled, for the reason that Robert McCausland and wife died many years prior to said pretended seizure and sale in 1879, leaving children and grandchildren in Louisiana and Texas, and these heirs were *1162 never made' parties, nor was any notice served on them; that the sheriff never saw and never had actual possession of the certificates of stock belonging to McCausland; that possession of said stock was never given to defendant, nor was he ever notified of any transfer on the books of plaintiff. He avers that on the day of sale, November 15, 1879, and prior thereto, it was distinctly agreed and understood between defendant and the attorneys of the bank in the suit of the Citizens Bank of Lonisiana vs. Robert McCausland and John E. Irvine, actual possessor of the land, that defendant was not to assume any of the responsibilities of a stockholder of said bank, and in bidding in said stock he was in error, and deceived by the representations and assurances of the attorneys representing the bank in. said case.
Defendant also pleaded the prescription of three, five and ten years.
Judgment was rendered in the District Court in favor of the defendant. Plaintiff appealed, and specially pleads in this court the prescription of three, five and ten years to defendant’s demand to set aside the sale.
At the time of the sale in November, 1879, in the proceedings of the Citizens Bank vs. Robert McCausland and John P. Irvine, the latter was the owner of and in possession of the property which had been mortgaged by McCausland to the bank under and through the probate sales which had been made, as has been stated, first in the successions of McCausland and later in the succession of Chinn.
The stock had not been sold at either of these sales and quoad that stock Irvine stood only as the owner of and in the possession of the property which had been mortgaged to secure it. He had assumed and was under no personal liability in regard to that stock when he bought the property from the succession of Chinn.
On the 15th of November, 1879, the date of the sale made by the bank under the executory proceedings referred to, the ownership of the shares of stock and that of the real estate was in different hands; the heirs of McCausland still remained the owners of the stock, but the real estate had by the probate sales mentioned become the property of and was in the possession of Irvine. Under the special legislation relative to the Citizens Bank the property, though sold, was, for the purpose of the enforcement of the rights of the bank, to be dealt with as if still held by McCausland, and proceedings under executory pro *1163 cess were to be carried on on that theory, regardless of the intermediate sales. This method of proceeding had been granted by way of benefit or privilege to the bank, but in the particular case the privilege would have been an actual burden, as McOausland had died, and to have made his heirs parties would have entailed both expense and delay. In view of. the fact that the land had been sold in the M Oausland succession and the heirs had ceased actually to have any interest in the property or to be concerned in after proceedings respecting it, the bank, with the consent of Irvine, the then owner and possessor, directed the executory proceedings which it instituted against Irvine, and contradictorily with him as the only defendant a sale took place at which Irvine became, as we have seen, the purchaser, for the price of eight hundred and fifty dollars cash.
Irvine gave a qualified consent to this proceeding, evidenced by the following endorsement upon the petition in the case:
“ Service of the within petition and order accepted, notice and citation waived, and I agree and consent that executory process issue without further forms, processes or delays, and that the property mortgaged may be seized and sold on November 20, 1879.
(Signed) “ J. E. Irvine.”
At this sale, not only was the real estate mortgaged sold, but with it was also sold one hundred and eighty-six shares of the capital stock of the bank.
The terms of sale were cash, and the value of the entire property offej ed for sale was fixed by the appraisers at one thousand two hundred and fifty dollars.
The amount of the stock subscription of the McOauslands, as reduced, was eighteen thousand six hundred dollars. The particular proceeding directed against Irvine was in enforcement of pas^ due calls on that subscription amounting to five hundred and fifty-eight dollars, with interest.
We are of the opinion that Irvine’s obligation, as resulting from his purchase of the land, was limited to the purchase price.
There was, as against the land, only one single claim — that securing by mortgage the stock subscription. It is true that simultaneously with the granting of the stock mortgage, there was granted a loan mortgage of even date, to secure amounts which it was assumed might possibly be borrowed by McOausland, but this mortgage was one of the *1164 class permitted to be given by Art. 3292 of the Oivil Oode to secure an obligation not yet risen into existence, but which, as declared by Art. 3293, is realized only in so far as the obligation for which it prospectively provides shall afterward actually arise. It was a mere contingent mortgage, which never came actually into life, for the reason that McOausland never obtained any money on the strength of his stock, and the land was sold without the privilege of borrowing having ever been utilized.
There is no question in this case of a sale by the bank under a senior mortgage and its effect upon a junior mortgage in its own favor, therefore the decisions quoted from 14 An. 237, Haynes vs. Harbour, have no bearing.
The case at bar is simply that of a mortgage creditor proceeding upon his claim by executory proceedings against the mortgaged property, asking that it be sold entirely for cash, and so selling it. There can be no question in law as to the effect of such a sale upon the property and upon the purchaser. The creditor, by his course, exhausted his rights against the property, • and the purchaser, by paying the purchase price, complied fully with all the legal obligations flowing from his purchase. If the creditor was entitled to demand that the property should be sold for cash to meet the past due calls, and on credit to meet such additional future calls as might be due to the bank on the stock indebtedness and mortgage, and subject to the original stock mortgage to secure such calls, he should have claimed and obtained a recognition of that right, and the property should have been advertised to be sold and sold on those terms, but it did nothing of the kind. The reason why this was not done is very clear, for with such a heavy liability resting on the property and the purchaser, no purchaser other than the bank itself could have been found. The only alternative left to the bank was either to purchase itself and then sell on private terms, free from all claims, or to find in advance a purchaser at a suitable price, and then sell the property at judicial sale, in manner and terms as was actually done in this case.
We have so far been, intentionally, separating Irvine’s rights and obligations, as a purchaser of the land, entirely from those which resulted or could result from the sale of the stock.
We now pass to that matter.
It will be seen at once that Irvine occupied a very different posi *1165 tion toward the stock at the time the executory proceedings were taken out from what he did toward the land; and the position of the MeOauslands was also entirely different as to the two. The McCauslands had the ownership of the stock and a legal interest in judicial proceedings in regard thereto and no ownership and no legal interest in the land and the judicial proceedings in respect to it. Irvine, on the contrary, had the ownership of the land and an interest in the proceedings relative thereto and none whatever in regard to the stocfc. The bank was authorized to deal and was safe in dealing in regard to the land with Irvine, who was its actual owner and possessor; but the bank and Irvine had no right whatever to deal with each other in respect to the sale of the stock. Irvine as to that stock was completely a third party and a stranger.
Proceedings carried on contradictorily with Irvine leading up to a sale were absolute nullities — the adjudication conferred no title — the sale was that of a third person without due process of law, and the stock remains to-day as it was before, the property of the McCausland heirs. It will not do to say that the MeOauslands will never claim the stock — that it is worthlesss — that it no longer represents a right, but exclusively evidences a liability. We have legally to deal with the stock as that of third persons, which has been attempted to be sold in judicial proceedings to which they were not parties.
Plaintiff claims that Irvine adheres to the sale of the land as made under the executory proceedings and repudiates the sale of the stock. It must be borne in mind that at the time of these proceedings Irvine was actually the owner of the land and he is its owner now. The effect of the sale under the executory proceeding as to Irvine was not as between the bank and himself to give him a new title — it simply operated to clear off an existing encumbrance upon the property; the proceeding as to its effect was rather an extinction of a mortgage by payment than a purchase.
The sale of the land was legal — the sale of the stock illegal— Irvine had the right to claim the benefits of the one and to reject the liabilities of the other. We do not think the pleas of prescription filed by the plaintiff well founded. For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.
Miller, J. recused.